UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

MARGARET ROJAS,

     Plaintiff,

v.                            Case No:  2:11-cv-124-FtM-MRM

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.

_____/

**OPINION AND ORDER**

This cause is before the Court on Plaintiff Margaret Rojas' Complaint (Doc. 1) filed on

March 9, 2011.  Plaintiff seeks judicial review of the final decision of the Commissioner of the

Social Security Administration ("SSA") denying her claims for disability insurance benefits and

a period of disability.  The Commissioner filed the Transcript of the proceedings (hereinafter

referred to as "Tr." followed by the appropriate page number), and the parties filed legal

memoranda in support of their positions.  For the reasons set out herein, the decision of the

Commissioner is **REVERSED AND REMANDED** pursuant to § 205(g) of the Social Security

Act, 42 U.S.C. § 405(g).

**I.**     **Social Security Act Eligibility, the ALJ's Decision, and Standard of Review**

     **A.**     **Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason

of any medically determinable physical or mental impairment that can be expected to result in

death or that has lasted or can be expected to last for a continuous period of not less than twelve

months.  42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905.

The impairment must be severe, making the claimant unable to do her previous work, or any

other substantial gainful activity that exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1505 - 404.1511, 416.905 - 416.911. Plaintiff bears the burden of persuasion through step four, while the burden shifts to the Commissioner at step five. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

**B.     Procedural History**

On December 6, 2005, Plaintiff filed an application for a period of disability and disability insurance benefits, alleging an onset date of July 2, 1992. (Tr. at 55, 284). Plaintiff later amended her alleged onset date to October 1, 1996. (Tr. at 15). Plaintiff's claims were denied initially on March 24, 2006 and on reconsideration on May 21, 2008. (Tr. at 55-56). Plaintiff sought review of those determinations. After conducting a hearing, Administrative Law Judge ("ALJ") Jimmy N. Coffman issued an unfavorable decision on April 15, 2009. (Tr. at 136-44). On January 21, 2011, the Appeals Council denied Plaintiff's request for review. (Tr. at 152-55). On March 9, 2011, Plaintiff filed a Complaint in this Court. (Doc. 1). On June 29, 2011, the Honorable John E. Steele granted Defendant's Opposed Motion to Remand. (Doc. 17 at 3). The Court remanded the case pursuant to Sentence Six of 42 U.S.C. § 405(g) in order to take all steps necessary to properly prepare the administrative record in this case. (*Id.*).

On remand, the Appeals Council vacated the ALJ's decision and remanded Plaintiff's claim. (Tr. at 159-161). After a hearing, ALJ Larry J. Butler issued an unfavorable decision on August 25, 2011. (Tr. at 57-69). On August 7, 2012, the Appeals Council assumed jurisdiction of the case and remanded the case for further review. (Tr. at 70-74). After another hearing, ALJ Butler issued an additional unfavorable decision on April 22, 2014. (Tr. at 76-89). On February 23, 2015, the Appeals Council again assumed jurisdiction and remanded the case for further review. (Tr. at 90-95). After a further hearing, ALJ T. Whitaker issued an unfavorable decision

on March 16, 2016. (Tr. at 11-32). Plaintiff subsequently exhausted her administrative remedies. (Doc. 36 at 3; Doc. 38 at 2).

Defendant filed an Answer (Doc. 24), the Transcript (Doc. 25), and an unopposed motion to reopen the case (Doc. 26) on June 20, 2016. The case was reopened on June 22, 2016. (Doc. 27). The parties filed Memoranda. (Docs. 36, 38). The parties consented to proceed before a United States Magistrate Judge for all proceedings. (*See* Doc. 33). This case is ripe for review.

### C. Summary of the ALJ's Decision

An ALJ must follow a five-step sequential evaluation process to determine if a claimant has proven that she is disabled. *Packer v. Comm'r of Soc. Sec.*, 542 F. App'x 890, 891 (11th Cir. 2013) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).[1] An ALJ must determine whether the claimant: (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) has the residual functional capacity ("RFC") to perform her past relevant work; and (5) can perform other work of the sort found in the national economy. *Phillips v. Barnhart*, 357 F.3d 1232, 1237-40 (11th Cir. 2004). The claimant has the burden of proof through step four and then the burden shifts to the Commissioner at step five. *Hines-Sharp v. Comm'r of Soc. Sec.*, 511 F. App'x 913, 915 n.2 (11th Cir. 2013).

The ALJ first found that Plaintiff last met the insured status requirements on March 31, 1998. (Tr. at 17). As a result, the ALJ noted that Plaintiff must have established disability on or before this date to be entitled to a period of disability and disability insurance benefits. (Tr. at

---

[1] Unpublished opinions may be cited as persuasive on a particular point. The Court does not rely on unpublished opinions as precedent. Citation to unpublished opinions on or after January 1, 2007 is expressly permitted under Rule 31.1, Fed. R. App. P. Unpublished opinions may be cited as persuasive authority pursuant to the Eleventh Circuit Rules. 11th Cir. R. 36-2.

15).  Plaintiff's alleged onset date is October 1, 1996.  (Tr. at 15).  Thus, the relevant time period

for evaluating Plaintiff's claims is October 1, 1996 to March 31, 1998.

At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in

substantial gainful activity from the alleged onset date of October 1, 1996 to March 31, 1998, the

date last insured.  (Tr. at 17).

At step two, the ALJ found that Plaintiff suffered from the following severe impairments

through the date last insured:  "degenerative disc disease of the cervical spine, degenerative disc

disease of the lumbar spine, history of major depressive disorder, depression, and anxiety."  (Tr.

at 17).

Additionally, the ALJ found that Plaintiff had a number of severe impairments, which the

evidence showed were severe *after* the date last insured but for which there was not a persuasive

evidentiary basis to reasonably infer that the impairments were medically determinable and

severe during the relevant period.  (Tr. at 17).  These impairments include:

> chronic gastritis, chronic epigastric pain and dyspepsia, facet syndrome, TLS nerve
> entrapment and muscle spasm, fatigue, chronic back pain, radiculopathy, a history
> of cervical, thoracic, and lumbar strain, irritable bowel syndrome (IBS),
> menopausal syndrome, GERD, a history of low grade gastritis, a history of gastritis
> secondary to H. Pylori, a history of fibroid, gallstones with cholelithiasis, chronic
> pain disorder associated with psychological factors, SI joint dysfunction, a history
> of myofascial pain, undeclared connective tissue disorder/fibromyalgia/myofascial
> pain, polyarthralgia of unclear etiology, hyperprolactinemia, headaches, sicca
> complex, fibromyalgia, iron deficiency anemia, premenstrual syndrome, chronic
> back pain syndrome, avoidant and dependent personality disorder, adjustment
> disorder with anxiety, and allergies.

(Tr. at 17-18).

Additionally, the ALJ found that Plaintiff's history of intestinal dysbiosis, urinary tract

infection, and leukocytosis were considered non-severe as at all times.  (Tr. at 18).

Finally, the ALJ found that Plaintiff's alleged rheumatoid arthritis, lupus, cervical facet syndrome accompanied by myofascitis and trigger points, cervical cranial syndrome, cervicalgia, lumber facet syndrome accompanied by myofascitis and trigger point formation, radiculitis, and sciatica were non-medically determinable.  (Tr. at 18).

At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments through the date last insured that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart. P, Appendix 1 (20 CFR §§ 404.1520(d), 404.1525, 404.1526).  (Tr. at 18).  The ALJ specifically considered Listings 1.02, 1.04, 12.04, and 12.06.  (Tr. at 18-20).

Based on the evidence, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform "less than the full range of medium work" through the date last insured.  (Tr. at 20).  Specifically, the ALJ found that:

> the claimant could have lifted, carried, pushed, or pulled 50 pounds occasionally and 25 pounds frequently.  Claimant could have sat, stood, or walked each for five hours in an eight-hour workday.  Claimant was limited to simple, routine, and repetitive work with "simple" defined as unskilled work tasks.  Claimant was limited to work that would have allowed the claimant to be off task five percent of the workday in addition to regularly scheduled breaks.  Claimant was limited to a work environment free of fast-paced production requirements.  Claimant was limited to work with only occasional workplace changes.

(Tr. at 20).

At step four, the ALJ determined that, through the date last insured, Plaintiff was unable to perform any past relevant work.  (Tr. at 30).

At step five, after considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed through the date last insured.  (Tr. at 30).  Specifically, the ALJ noted that if Plaintiff had the RFC to perform the full range of medium work, a finding of

"not disabled" would be directed by Medical-Vocational Rule 203.29. (Tr. at 31). The ALJ

further noted, however, that Plaintiff's "ability to perform all or substantially all of the

requirements of this level of work was impeded by additional limitations." (Tr. at 31). As a

result, the ALJ asked questions to a vocational expert ("VE") to determine the extent to which

these additional limitations erode the unskilled medium occupational base, through the date last

insured. (Tr. at 31). The VE testified that an individual with Plaintiff's age, education, work

experience, and RFC would be able to perform the requirements of representative occupations

such as:

> 1. Transporter (Patient), DOT #355.677-014, which is performed at the medium exertional level, has an SVP of 2, and of which there are 98,980 jobs in the national economy;
>
> 2. Self-Service Laundry Dry Cleaning Attendant, DOT #369.677-010, which is performed at the medium exertional level, has an SVP of 2, and of which there are 437,610 jobs in the national economy;
>
> 3. Stock Checker (Apparel), DOT #299.667-014, which is performed at the light exertional level, has an SVP of 2, and of which there are 88,830 jobs in the national economy;
>
> 4. Office Helper, DOT #239.567-010, which is performed at the light exertional level, has an SVP of 2, and of which there are 71,716 jobs in the national economy.

(Tr. at 31).[2]

The ALJ found – pursuant to Social Security Ruling ("SSR") 00-4p – that the VE's

testimony was consistent with the information contained in the DOT. (Tr. at 31). Based on the

testimony of the VE, the ALJ found that, considering the Plaintiff's age, education, work

experience, and RFC, Plaintiff "was capable of making a successful adjustment to other work

---

[2] "DOT" refers to the *Dictionary of Occupational Titles*, and "SVP" refers to the Specific Vocational Preparation Code.

that exists in significant numbers in the national economy" through the date last insured. (Tr. at 31-32). Thus, the ALJ determined that a finding of "not disabled" was appropriate. (Tr. at 32).

Accordingly, the ALJ found that Plaintiff was not under a disability, as defined in the Social Security Act, at any time from October 1, 1996, the alleged onset date, through March 31, 1998, the date last insured. (Tr. at 32).

### D.     Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standard, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. §405(g). Substantial evidence is more than a scintilla; *i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982); *Richardson*, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that "the evidence preponderates against" the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating that the court must scrutinize the entire record to determine reasonableness of factual findings).

## II.     Analysis

On appeal, Plaintiff raises five issues, which are summarized as follows:

(1)     Whether the Commissioner met her burden at step five of showing that there were a significant number of jobs in the national economy which the claimant could have performed.

(2)     Whether the Court should remand the case for an immediate award of benefits.

(3)     Whether the ALJ improperly failed to obtain testimony of a medical expert pursuant to SSR 83-20.

(4)     Whether the ALJ failed to develop the record by failing to obtain the testimony of a medical expert.

(5)     Whether the ALJ properly rejected the opinion of Dr. Jeffrey Dash, D.O.

(Doc. 36 at 1-2).  The Court addresses these issues below, beginning with the ALJ's step five analysis.

### A.     The ALJ's Step Five Analysis

Plaintiff first argues that the ALJ's decision is not supported by substantial evidence because the ALJ's RFC assessment was more restrictive than her hypothetical question to the VE.  (Doc. 36 at 10).  Specifically, Plaintiff points out that the ALJ limited her to standing, walking, and sitting for five hours each in an eight-hour workday in the RFC, but the hypothetical question posed to the VE limited the hypothetical individual to standing, walking, and sitting for six hours each in an eight-hour workday.  (*Id.* at 11 (citing Tr. at 20, 1213)).  Plaintiff argues, therefore, that "the ALJ erred as a matter of law and her decision was not supported by substantial evidence."  (*Id.* (citations omitted)).

Defendant disagrees, arguing that the testimony of the VE provides substantial evidence that Plaintiff could perform other work during the relevant period.  (Doc. 38 at 7).  Defendant argues that "[s]ubstantial evidence supports the ALJ's decision that Plaintiff was not disabled

during the relevant period from her amended alleged onset date of October 1, 1996, through her date last insured of March 31, 1998." (*Id.*). Specifically, Defendant acknowledges that while an ALJ "must produce evidence that other work exists that the claimant could perform given her RFC and other vocational factors," a claimant "still must prove that she cannot perform the work identified by the ALJ to meet her burden of proving that she was disabled." (*Id.* at 8 (citing 20 C.F.R. § 404.1560(c)(2); *Doughty v. Apfel*, 245 F.3d 1274, 1278 n.2 (11th Cir. 2001); *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999))). Here, Defendant argues that the VE testified that Plaintiff could perform representative occupations of transporter, self-service laundry dry cleaning attendant, stock checker, and office helper. (*Id.* (citing Tr. at 1214)). Defendant argues that "[s]ubstantial evidence supports the ALJ's RFC finding and hypothetical questions to the VE." (*Id.*). Thus, Defendant argues that the ALJ "properly relied on the VE's testimony to find that Plaintiff could perform other work through her date last insured of March 31, 1998." (*Id.* at 8-9 (citations omitted)). Moreover, Defendant argues that Plaintiff "failed to show that she could not have performed the jobs identified by the VE even if limited to sitting, standing, and walking each for five hours in an eight-hour workday." (*Id.* at 9).

On this point, Defendant is correct that if the Commissioner demonstrates that there are jobs Plaintiff can perform, then Plaintiff must prove she is unable to perform those jobs in order to be found disabled. *See Jones*, 190 F.3d at 1228. Nevertheless, the burden will only shift back to Plaintiff if the Commissioner shows that there are jobs that Plaintiff can perform. *See Doughty*, 245 F.3d at 1278 n.2. Here, the ALJ relied on the testimony of the VE to demonstrate that there are jobs that Plaintiff can perform. (Tr. at 31-32). "In order for a VE's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Jones*, 190 F.3d at 1229.

Here, the hypothetical questions posed to the VE included less impairments than the ALJ assigned to Plaintiff in the RFC determination. Specifically, the RFC limited Plaintiff to only *five* hours of standing, walking, and sitting or walking per day. (Tr. at 20). The question to the VE, however, indicated that the hypothetical person with Plaintiff's limitations was limited to *six* hours per day of standing, walking, and sitting or walking. (Tr. at 1213). Because the RFC included more limitations than the hypothetical, it is clear that the ALJ posed a hypothetical question to the VE that did not comprise all of Plaintiff's impairments. *See Jones*, 190 F.3d at 1229. As a result, the VE's testimony – on which the ALJ based her finding – cannot constitute substantial evidence. *See id.* Furthermore, because the VE's testimony is not substantial evidence, the Commissioner has not demonstrated that there are jobs in the national economy that Plaintiff could have performed. *See id.* Moreover, the burden did not shift back to Plaintiff to prove that she could have performed the jobs identified by the VE. *See Doughty*, 245 F.3d at 1278 n.2.

Additionally, the Court cannot conclude that the error is harmless. Specifically, it is unclear – based on the record presented – whether the representative occupations listed by the ALJ would still be representative if the hypothetical questions included all of Plaintiff's limitations. The possibility exists that limiting Plaintiff to only five hours of standing, walking, and sitting or walking per day instead of six hours per day would preclude a finding that there were a significant number of jobs in the national economy which Plaintiff could have performed.

Upon review, the ALJ's decision is not supported by substantial evidence. Accordingly, the Court finds that the decision of the Commissioner must be reversed and remanded on this ground. Upon remand, the ALJ is directed to re-evaluate Plaintiff's RFC and ask the VE

hypothetical questions that correctly include all of Plaintiff's impairments. *See Jones*, 190 F.3d at 1229.

### B. SSR 83-20 and Development of the Record

The Court next addresses Plaintiff's contentions that the ALJ erred by failing to obtain testimony of a medical expert based pursuant to SSR 83-20 and/or that the ALJ failed to properly develop the record. (Doc. 36 at 1-2, 14-23).

Plaintiff argues that SSR 83-20 requires an ALJ to consult a medical advisor to determine the onset date before a disability finding was made. (*Id.* at 15 (citing *March v. Massanari*, No. 00-16577, 265 F.3d 1065 (Table) (11th Cir. Jul. 10, 2001))).[3] Specifically, Plaintiff argues that she "suffers from a number of slowly progressing impairments of non-traumatic origin, including mental disorders, gastrointestinal problems, back problems, joint problems, and a number of other impairments." (*Id.* at 1). Plaintiff notes that the ALJ found that many of these impairments became severe after the date last insured. (*Id.* at 23). Plaintiff further argues that "the record contains opinions from several doctors suggesting that the Plaintiff is disabled" and that "the record lacks any medical evidence from the narrow time period between the alleged disability onset date, October 1, 1996, and the date last insured, March 31, 1998." (*Id.* at 1). Accordingly, Plaintiff contends that "the ALJ did not have legitimate medical basis for her conclusion that the Plaintiff was not disabled during the relevant time period and should have obtained the services of a medical expert to infer the onset of the Plaintiff's disability" pursuant to SSR 83-20. (*Id.*). Moreover, Plaintiff argues that even if SSR 83-20 is not applicable, the ALJ's failure to obtain a medical expert violated her duty to develop the record. (*Id.* at 23-25).

---

[3] This unpublished opinion is not available on either Westlaw or Lexis. Plaintiff provided the slip opinion as an exhibit. (*See* Doc. 36-6).

Defendant disagrees, arguing that Plaintiff failed to show that the ALJ was required to obtain testimony from a medical expert. (Doc. 38 at 13). Defendant argues that SSR 83-20 is applicable only after the ALJ has made a finding of disability. (*Id.* at 14 (citing *Caces v. Comm'r, Soc. Sec. Admin.*, 560 F. App'x 936, 939 (11th Cir. 2014); *Klawinski v. Comm'r of Soc. Sec.*, 391 F. App'x 772, 776 (11th Cir. 2010)). Defendant points out that the ALJ did not find Plaintiff to be disabled either before or after the expiration of her insured status. (*Id.* at 15). Thus, Defendant argues that SSR 83-20 is not applicable to Plaintiff's case because the ALJ had no need to determine an onset date. (*Id.*).

Additionally, Defendant argues that Plaintiff has not shown that she was prejudiced regarding the development of the record. (*Id.* at 14). Moreover, Defendant argues that "Plaintiff failed to prove she was disabled during the relevant period" and that "the ALJ was not required to go on a fishing expedition with a medical expert in an attempt to conjure evidence that might support Plaintiff's claim." (*Id.* at 17).

"Social Security Rulings are agency rulings published under the Commissioner's authority and are binding on all components of the Administration." *Klawinski*, 391 F. App'x at 775 (citing *Sullivan v. Zebley*, 493 U.S. 521, 531 n.9 (1990)). Social Security Rulings are not, however, binding on the Court. *Id.* Nevertheless, Social Security Rulings are afforded "great respect and deference, if the underlying statute is unclear and the legislative history offers no guidance." *Id.* (citing *B. ex rel. B. v. Schweiker*, 643 F.2d 1069, 1071 (5th Cir. 1981)).

For disabilities of nontraumatic origin, SSR 83-20 states, in pertinent part:

> With slowly progressive impairments, it is sometimes impossible to obtain medical evidence establishing the precise date an impairment became disabling. Determining the proper onset date is particularly difficult, when, for example, the alleged onset and the date last worked are far in the past and adequate medical records are not available. In such cases, it will be necessary to infer the onset date

from the medical and other evidence that describe the history and symptomatology of the disease process.

1983 WL 31249, at *2.  Additionally, SSR 83-20 states that when precise evidence is not available:

> In some cases, it may be possible, based on the medical evidence to reasonably infer that the onset of a disabling impairment(s) occurred some time prior to the date of the first recorded medical examination, e.g., the date the claimant stopped working.  How long the disease may be determined to have existed at a disabling level of severity depends on an informed judgment of the facts in the particular case.  This judgment, however, must have a legitimate medical basis.  At the hearing, the administrative law judge (ALJ) should call on the services of a medical advisor when onset must be inferred.  If there is information in the file indicating that additional medical evidence concerning onset is available, such evidence should be secured before inferences are made.

*Id.* at *3.

The Eleventh Circuit has not squarely addressed in a published opinion whether SSR 83-20 is only applicable after there has been a finding of disability.  Nonetheless, there are three unpublished cases, cited by the parties, on point.

First, Plaintiff cites to *March v. Massanari*, No. 00-16577, 265 F.3d at 1065.  In *March*, the Eleventh Circuit reversed and remanded the case due to the ALJ's failure to utilize a medical advisor pursuant to SSR 83-20.  No. 00-16577, slip op. at 5-6.  There, the ALJ made no finding that the claimant had become disabled at any time.  *Id.* at 5 n.1.  Nevertheless, all of the claimant's treating physicians who treated him several years after the date he was last insured determined that the claimant showed signs of bipolar disorder at least six years before his insured status ended.  *Id.* at 5.  The court held that "SSR 83-20 does not require . . . a determination of disability as a condition precedent to appointment of a medical advisor."  *Id.* at 5.  Instead, the court stated that "SSR 83-20 expressly contemplates that eligibility itself may be affected by the onset date . . . ."  *Id.*  Thus, the court stated that "[w]here . . . there is strong evidence that [a

claimant] became disabled at some time, the determination of the onset date is critical." *Id.* In these situations, the court held that SSR 83-20 should not be avoided by the technicality that the ALJ did not make a finding that the claimant was disabled. *See id.*

Defendant, however, points to *Caces v. Comm'r, Soc. Sec. Admin.* and *Klawinski v. Comm'r of Soc. Sec.* in support of her argument. (Doc. 38 at 14). In *Caces*, the Eleventh Circuit affirmed the decision of the Commissioner despite the lack of a medical advisor pursuant to SSR 83-20. 560 F. App'x at 939. In that case, the court noted that "[t]he plain language of SSR 83-20 indicates that it is applicable only after there has been a finding of disability and it is then necessary to determine when the disability began." *Id.* (citation omitted). There, the court specifically noted that the ALJ found that the claimant "was not disabled prior to the date last insured based on ample, unambiguous medical evidence from both before and after the date last insured." *Id.* Accordingly, "because the ALJ did not find that [the claimant] was disabled, and because that finding is supported by the evidence," the court held that "the ALJ did not err in failing to call a medical expert to determine an onset date of such a disability." *Id.*

Similarly, in *Klawinski*, the Eleventh Circuit affirmed the decision of the Commissioner on this issue despite the lack of a medical advisor pursuant to SSR 83-20. 391 F. App'x at 776. There, the court noted that "[t]here are two situations where the ruling suggests the need for the ALJ to call a medical advisor during a hearing . . . ." *Id.* The first is "where it may be possible, based on medical evidence, to 'reasonably infer that the onset of a disabling impairment(s) occurred some time prior to the date of the first recorded medical examination.'" *Id.* The second involves a malignant neoplastic disease. *Id.* In that case, however, the court concluded that "the ALJ did not contravene SSR 83–20 because the ALJ ultimately found that [the claimant] was not

disabled." *Id.* The court stated that "SSR 83-20 only required the ALJ to obtain a medical expert in certain instances to determine a disability onset date after a finding of disability." *Id.*

Additionally, this Court has rendered decisions on this issue. For instance, in *Sabillon-Perdomo v. Colvin*, the Court affirmed the decision of the Commissioner, noting that "SSR 83-20 is only applicable when an ALJ first determines that a plaintiff is disabled." No. 8:14-CV-2826-T-AEP, 2016 WL 7428798, at *5 (M.D. Fla. Mar. 31, 2016). There, the Court noted that, given the complete lack of medical records to establish a finding of disability, there was "no need to make an inference regarding an onset date because any such inference would invariably have to be without a legitimate medical basis." *Id.* at *6.

Nevertheless, in *McManus v. Barnhart*, the Court reversed the decision of the decision of the Commissioner for failure to comply with SSR 83-20. No. 5:04-CV-67-0C-GRJ, 2004 WL 3316303, at *6-7 (M.D. Fla. Dec. 14, 2004). There, the Court noted that "the issue of onset is inextricably tied to the determination of disability in cases where the impairment is a slowly progressive condition that is not traumatic in origin." *Id.* at 6. Because of the tie between onset and the determination of disability, the Court concluded that "the most logical interpretation of SSR 83-20 is to apply it to situations where the ALJ is called upon to make a retroactive inference regarding disability involving a slowly progressive impairment, and the medical evidence during the insured period is inadequate or ambiguous." *Id.* In those situations, the Court stated that "the ALJ should be required to obtain the advice of a medical advisor to assist the ALJ in making the determination from the available medical evidence of whether the slowly progressive impairment constituted a disability prior to the date last insured." *Id.* In *McManus*, the Court ultimately concluded that the plaintiff's impairment "was a slowly progressive one and

that the ALJ was required to make a retroactive inference regarding the onset and existence of disability and, thus, SSR 83-20 is implicated." *Id.* at 7.

Upon review, while the parties cast the various decisions as competing, the Court finds that the decisions may be read in harmony. Specifically, in *March*, although the ALJ made no finding that the claimant was disabled, the Eleventh Circuit stated that "[w]here . . . there is *strong evidence* that [a claimant] *became disabled at some time*, the determination of the onset date is critical." No. 00-16577, slip op. at 5 (emphasis added). Thus, *March* supports the proposition that when there is strong evidence that Plaintiff became disabled at some time, SSR 83-20 should not be avoided even if there has been no finding by the ALJ that the claimant was disabled. *See id.* Instead, in these situations, a medical advisor should be utilized to determine the onset and/or existence of disability. *See id.*

This conclusion is bolstered by the Eleventh Circuit's discussion in *Caces.* In *Caces*, the court noted that the ALJ in *March* had "found that the claimant was not disabled before the date last insured, based on the absence of sufficient medical evidence for the period of insurance from which to ascertain the date of onset." *Caces*, 560 F. App'x at 939. The court further noted that all of March's physicians who had treated him several years after the date he was last insured had determined that he evidenced signs of bipolar disorder at least six years before his date last insured. *Id.* As a result, the court stated that "the uncertain date of onset for March *would need to be inferred*, given the sparse medical record predating the date last insured" and based on "*the overwhelming evidence* that came to light after the date last insured from his then treating physicians." *Id.* (emphasis added). The court stated that "[t]he circumstances of *March* presented precisely the situation under SSR 83-20 calling for a medical advisor to assist in determining an inferred onset date." *Id.*

Nevertheless, the record in *Caces* supported the ALJ's finding that the claimant was not disabled prior to the date last insured because the finding was based "on ample, unambiguous medical evidence from both before and after the date last insured." *Id.* at 938. Thus, because the record adequately supported a finding that the claimant was not disabled during the relevant period, the court held that "the ALJ did not err in failing to call a medical expert to determine an onset date of such a disability." *Id.*

Similarly, *Klawinski* is fully consistent with *Caces* and *March* because the court ultimately affirmed the ALJ's decision and its finding that the claimant was not disabled. *See Klawinski*, 391 F. App'x at 776. There, the record supported the ALJ's findings. *See id.*

Likewise, this Court's decision in in *Sabillon-Perdomo* demonstrates that when the record is clear, a decision is supported by substantial evidence, and there is no error. *See Sabillon-Perdomo*, 2016 WL 7428798, at *5-6.

Conversely, in *McManus*, this Court reversed the decision of the Commissioner, stating that due to the link between onset and the determination of disability, SSR 83-20 should apply in "situations where the ALJ is called upon to make a retroactive inference regarding disability involving a slowly progressive impairment, and the medical evidence during the insured period is inadequate or ambiguous." 2004 WL 3316303, at *6.

Taking these opinions together with the language of SSR 83-20, the distinguishing factors – when a claimant has a slowly progressing impairment(s) of nontraumatic origin – are the presence of strong evidence of disability at any time and the adequacy of the record. If there is strong evidence that a claimant became disabled at some time due to a slowly progressing impairment(s) of nontraumatic origin, then SSR 83-20 requires an ALJ to utilize a medical advisor to determine the onset and/or existence of a claimant's disability. *See March*, No. 00-

16577, slip op. at 5; *McManus*, 2004 WL 3316303, at *6.  If, however, the record adequately supports a finding that the claimant was not disabled during the relevant period, then there is no error for failing to utilize the services of a medical advisory pursuant to SSR 83-20.  *See Caces*, 560 F. App'x at 939; *Klawinski*, 391 F. App'x at 776; *Sabillon-Perdomo*, 2016 WL 7428798, at *5-6.

Accordingly, based on the above-cited court decisions and the language of SSR 83-20, an ALJ is required to secure the services of a medical advisor to determine the onset and/or existence of a disability during the relevant period if:  (1) the claimant suffers from a slowly progressing impairment(s) of nontraumatic origin; (2) there is strong evidence the claimant became disabled at some time; and (3) the evidence during the relevant period is inadequate or ambiguous.  The Court addresses these factors as applied to Plaintiff's case in turn.

First, it appears that Plaintiff suffers from slowly progressing impairments of nontraumatic origin.  Specifically, the ALJ found Plaintiff suffered from a number of conditions—none of which appear to be the result of a traumatic injury.  (Tr. at 17-18). Moreover, many of these conditions appear to be slowly progressing impairments.  For instance, Plaintiff testified that some of her impairments, including some related to her head and neck, began in the 1980s and have been progressing since then.  (*See* Tr. at 1194-98).  Similarly, Plaintiff testified that her ongoing gastrointestinal and stomach issues began before 1998.  (Tr. at 1199).[4]  Thus, the Court finds that Plaintiff has slowly progressing impairments of nontraumatic origin.

---

[4] While Defendant contends that a record from North Collier Hospital indicates that Plaintiff denied previous epigastric pain (Tr. at 629), the record does not definitively show that Plaintiff never had any gastrointestinal and/or stomach issues whatsoever prior to 1998.  Instead, the record only demonstrates that Plaintiff "never had this pain before."  (Tr. at 629).

Next, there is strong evidence that Plaintiff became disabled at some time. Plaintiff specifically points out that many doctors have opined that she is disabled. (Doc. 36 at 18-20). In fact, at least six professionals cited by Plaintiff rendered opinions suggesting that Plaintiff has disabling impairments. *See id.*

For instance, on March 28, 2007, Maria Vargas, M.D. opined that Plaintiff has been disabled since 1996. (Tr. at 821-22). On May 30, 2005, Joseph Spano, M.D. opined that Plaintiff "is unable to perform any type of employment at the present day and time" and that "[f]rom a medical standpoint, she is deemed to be totally disabled." (Tr. at 634). Further, on May 15, 2007, Jeffrey Dash, D.O. opined that Plaintiff's need for frequent trips to the bathroom caused by her irritable bowel syndrome would interfere with her ability to perform full-time work to any "real satisfactory degree." (Tr. at 959). Additionally, Plaintiff points out that a chiropractor, Mary Moses, D.C., opined on December 14, 2005 that "Plaintiff is unable to perform any type of employment at the present day and time." (Tr. at 713). Plaintiff also cites an opinion by Christina Needham, Ed. D., which indicated that Plaintiff's mental impairments rendered her disabled prior to the date last insured. (Tr. at 1171). Finally, a psychologist, Sallie Norquist, Ph.D., opined in 1991 and 1992 that Plaintiff was totally disabled due to her inability to handle stress. (Tr. at 647, 666).

Additionally, as noted by the ALJ, Plaintiff has been receiving long-term disability since she left her employment with the phone company. (Tr. at 21).[5] Accordingly, based on the evidence of record, the Court finds that there is strong evidence that Plaintiff became disabled at some time.

---

[5] While there is no indication that the standard used by the long-term disability carrier is the same as the applicable standards under the Social Security Act, the Court finds that this fact nevertheless constitutes evidence that Plaintiff became disabled at some point.

Finally, the evidence during the relevant period is inadequate or ambiguous. Specifically, Plaintiff points out that many medical records from the relevant period could not be obtained. (Doc. 36 at 21). Moreover, Defendant appears to concede that there was a lack of objective medical findings during the relevant time period. (Doc. 38 at 16). Thus, the Court finds that the medical evidence of record for the relevant period is inadequate and ambiguous.

Upon review, while the ALJ made no finding that Plaintiff was disabled, the Court nevertheless finds that Plaintiff has shown that the ALJ should have secured the services of a medical advisor pursuant to SSR 83-20. Specifically, the record supports a finding that Plaintiff suffers from slowly progressing impairments of nontraumatic origin. Additionally, there is strong evidence that Plaintiff became disabled at some time. Finally, the evidence during the relevant period is inadequate and ambiguous. Accordingly, because the ALJ should have secured the services of a medical advisor pursuant to SSR 83-20, the Court finds that this case must be remanded for further findings of fact consistent with this Opinion and Order. On remand, a medical advisor should be obtained pursuant SSR 83-20 to assist the ALJ in determining the onset and/or existence of Plaintiff's disability prior to the date last insured.[6]

### C.  The ALJ's Review of Dr. Dash's Medical Opinion

Plaintiff objects to the ALJ's review of the medical opinion of Dr. Dash. (Doc. 36 at 25). Upon review, it appears that many of the medical opinions of record were discounted because they were not consistent with records from the relevant period. (*See* Tr. at 29). The Court has determined, however, that this case must be remanded for further factual findings. Because the ALJ must make further findings of fact and because any new evidence may impact the Court's

---

[6] The Court expressly declines to make factual findings in this Order. Factual findings must be made by the Commissioner upon a review of the entire record.

analysis of other elements of the ALJ's decision, the Court finds that any ruling on Plaintiff's arguments related to Dr. Dash's opinion would be premature at this time. Upon remand, the ALJ must reevaluate all of the medical evidence of record in evaluating Plaintiff's case, including the weight given to Dr. Dash's opinion and the reasons therefore. *See Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011).

### D. Immediate Award of Benefits

Finally, Plaintiff requests that the Court reverse and remand the case for an immediate award of benefits. (Doc. 36 at 14 (citations omitted)). Plaintiff notes that this case has been pending for a very long time. (*See id.* at 12). Plaintiff argues that "[t]he Commissioner is not entitled to remands to correct errors *ad infinitum*." (*Id.* at 14).

Defendant disagrees, contending that "[e]ven if the Court finds that substantial evidence does not support the ALJ's decision or that the ALJ did not follow the applicable legal standards, the appropriate remedy would be remand for further administrative proceedings, not for an award of DIB as argued by Plaintiff." (Doc. 38 at 10). Defendant argues that "[r]emand for an award of disability benefits is appropriate only where the Commissioner 'has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt.'" (*Id.* at 11 (citing *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993)); emphasis in original omitted).

On this issue, the Court agrees with Defendant. While the Court has found that this case must be reversed and remanded, an award of benefits is not appropriate because the Court cannot conclude that the Commissioner has already considered all of the essential evidence or that the cumulative effect of the evidence establishes Plaintiff's disability without any doubt. *See Davis*,

985 F.2d at 534. The Court, therefore, will remand this case for further administrative proceedings consistent with this Opinion and Order.

## III. Conclusion

Upon consideration of the submissions of the parties and the administrative record, the Court finds that the decision of the ALJ is not supported by substantial evidence.

Accordingly, the Court hereby **ORDERS** that:

1) The decision of the Commissioner is **REVERSED AND REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for the Commissioner (1) to re-evaluate Plaintiff's residual functional capacity and ask the vocational expert hypothetical questions that include all of Plaintiff's impairments and (2) to obtain a medical advisor pursuant SSR 83-20 to assist the ALJ in determining the onset and/or existence of Plaintiff's disability prior to the date last insured.

2) The Clerk of Court is directed to enter judgment accordingly, terminate any pending motions and deadlines, and close the case.

3) If Plaintiff prevails in this case on remand, Plaintiff must comply with the Order (Doc. 1) entered on November 14, 2012, in Misc. Case No. 6:12-mc-124-Orl-22.

**DONE AND ORDERED** in Fort Myers, Florida on May 17, 2017.

MAC R. MCCOY
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties